(No. 6309— )

FRED PAUL KLOESE, Claimant, *vs.* STATE OF ILLINOIS, DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Respondent.

*Opinion filed July 10, 1974.*

TOPPER & WEISS, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; JOHN W. PURNEY, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant, Fred Paul Kloese, has brought this action seeking damages for personal injuries sustained when the automobile in which he was a passenger collided with the rear of a dump truck being operated by respondent, Andrew Ferrucci, an employee of the State of Illinois.

Claimant contends that Ferrucci was negligent in stopping his truck in the middle of a roadway, in violation of Chapter 95½, Section 11-1301(a), Illinois Revised Statutes; in stopping the vehicle without displaying parking lights or emergency lights, in violation of Chapter 95½, Section 12-104, Illinois Revised Statutes; in operating the truck without sufficient lights, in violation of Section 12-102 of Chapter 95½, Illinois Revised Statutes; in failing to keep a proper lookout for vehicles on the highway; and in being otherwise careless and negligent in operating his vehicle.

The incident occurred on January 9, 1970, at approximately 11:30 p.m. Claimant was traveling in an easterly direction on 95th Street in a forest preserve area of Cook County, Illinois, in an automobile being driven

by one Elwood Stanley. Respondent Ferrucci was also traveling in an easterly direction on 95th Street. He was alone in his vehicle, a four-ton dump truck, on a routine "ice and snow patrol" which required him to travel the roads in the area and salt patches of ice.

At the site of the occurrence, 95th Street is a two-lane, unlighted roadway with one lane for westbound traffic and one lane for eastbound traffic. Approximately 200 feet west of the crash site, the road travels over a hill.

Ferrucci described the truck as bearing six red lights on the rear, placed in a "V" shape pattern. Each light was four inches in diameter. The two lower running lights were two feet apart and approximately three feet off the ground in the center of the truck. The two middle running lights were four feet apart and four feet off the ground, and the upper lights were six feet off the ground and five feet apart. The top of the truck bore a revolving amber "Mars" light and two flashing red lights extending from the sides of the truck. The "Mars" light and the flashing lights were operated by two separate switches located in the cab of the truck.

The weather was clear, although the sides of the road were snow covered.

The testimony of the claimant and Elwood Stanley, the driver of the car in which he was driving, directly contradicts that of respondent Ferrucci as to the circumstances of the accident. Stanley testified that he cleared the crest of a hill about 200 feet west of the crash site, traveling approximately 35 miles per hour. He saw the taillights of respondent's truck and kept going until he noticed that the truck was stopped. He said he applied his car brakes when he was four to five car lengths

behind the truck but was unable to stop before striking the truck. He testified that he could not swing into the westbound lane of traffic because of an oncoming car, and he could not drive onto the right shoulder of the road because of a car stalled on the shoulder to the right of the truck.

According to Stanley, the truck was stopped at the moment of impact and neither the "Mars" light nor the flashing red lights on the sides of the truck were operating.

Ferrucci radioed for police following the accident, and invited claimant and Stanley to await their arrival in the cab of his truck. Stanley said that while sitting in the cab, he noticed for the first time the reflection of the truck's blinking lights.

Stanley was ticketed for driving too fast for conditions, and entered a plea of guilty to the charge. He said he did so on the advice of his parents, since it was his first ticket.

Claimant testified that when Stanley's car cleared the crest of the hill just west of the accident site, he noticed two small obscure red lights "ahead of them on respondent's truck. He could not tell if the lights were moving. He did not see a "Mars" light or other flashing lights on the truck. He said that he called Stanley's attention to the truck when they were about 75 to 100 feet away. When the collision occurred, he was thrown against the dashboard of the car and he fell stunned to the floor of the car. His glasses flew off, and he had to search for them. He got out of the car "five or ten minutes" after the accident.

Claimant testified that while they awaited the arrival of police in the cab of Ferrucci's truck, he saw

Ferrucci turn on the "Mars" light and the flashing red blinking lights. Claimant said that he never saw the "Mars" light or flashing lights on the truck prior to the impact.

Claimant described the truck as being "large, dark, and heavy."

Andrew Ferrucci, called by the claimant as an adverse witness, testified that he was in the process of salting an ice patch at the time of the accident. He said his vehicle "was moving very slow, five or ten miles per hour" at the moment of impact. He said he radioed in to report an abandoned auto on the shoulder of the road "probably" at the same time as he was salting. He estimated that approximately two or three minutes elapsed between his call about the abandoned car and the accident. He said that the accident occurred at, or shortly beyond, the eastern most end of the ice patch.

Phillip Alyoyino, Ferrucci's supervisor at the time of the accident, was called to the crash site. He described Ferrucci's truck as being "bright orange," and said it was cleaned after every snowstorm. He said that when he arrived at the scene, the "Mars" light and flashing red lights on the truck were operating.

He said that respondent's truck was resting on an ice patch, and the wheels of Stanley's car just touched the western edge of the patch.

Claimant sustained damage to eight of his teeth in the accident. Two were removed, and a bone graft was performed to fill the hole caused by the extraction. Several other teeth had to be capped, and two bridges inserted. Claimant's hospital and dental bills totalled $1,841.00.

To recover for his injuries, claimant bears the burden of establishing by a preponderance of the evidence that the respondents were negligent; that he was free from contributory negligence; and that the negligence of the respondents was the proximate cause of the injuries. Respondents contend that these elements of liability were not proven by the claimant, and after a careful consideration of the record, we agree.

Claimant initially alleges in his complaint, that respondent was negligent in stopping his vehicle in the middle of a roadway without displaying parking or emergency lights, in violation of certain provisions of the Illinois Motor Vehicle Act. Aside from the fact that the evidence is contradictory as to whether Ferrucci did indeed stop his vehicle in the middle of the roadway without proper lights, claimant cannot prevail upon this theory. At the time of the occurrence, Section 120 (f) of the Illinois Motor Vehicle Act, Chapter 95½, Ill. Rev. Stat. 1969, Sec. 120 (f), provided:

"The provisions of this Act, with the exception of Articles IV and V, do not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of the highway, but apply to such persons and vehicles when traveling to or from such work."

While contradictory in other respects, the record is clear that at the time of the occurrence, Ferrucci was engaged in work upon the surface of the highway. Respondent's charges of negligence, based upon the respondent's violation of provisions of the Motor Vehicle Act while so engaged, must therefore fail.

Notwithstanding the provisions of Section 120(f) of the Illinois Motor Vehicle Act, however, a State employee engaged in work upon a highway is held to a standard of ordinary care in performing his work. *Creamer v. Rode*, 37 Ill.App. 2d 148, 185 N.E. 2d 345 (1962); *Lusietto v. Kegan,*

107 Ill.App. 2d 239, 246 NE 2d 24 (1969). Ferrucci was, therefore, obliged to perform his work upon the highway as would an ordinarily prudent person under similar circumstances.

Both claimant and Elwood Stanley, the driver of the car in which claimant was riding, testified that Ferrucci's truck was stopped at the moment of impact, and that warning lights with which the truck was equipped were not operating. Ferrucci stated that the truck was moving, and the warning lights, fully operational. Claimant further testified that the truck was dark in color, whereas Ferrucci's supervisor, who arrived at the accident site shortly after the collision, testified that the truck was bright orange in color. It is uncontradicted, however, that the rear of Ferrucci's truck bore six red lights, each of which was four inches in diameter. Both claimant and Stanley, the driver of the car, observed lights on the truck as they passed over the crest of a hill several hundred feet from the crash site.

The Court must conclude from the evidence before it, that the respondent's truck was being operated with adequate lights to warn the motoring public. In our view, claimant's injuries were proximately caused by the failure of Stanley, driver of the car in which claimant was riding, to keep a proper lookout and to keep his automobile under proper control.

The claim is hereby denied.